Ruffin, J.
The case is, that Horniblow, in his lifetime, became indebted to Ramsay by bond,' bearing date the 15th June, 1798. Ramsay died 9th September, 1799, before any payment made on the bond, having made jits’ last will aftd testament, whereof he appointed Alexander Millen and the present Plaintiff the executors, who proved the same. Horniblow died 15th October, 1799, intestate, and administration of his estate was granted to the same MUlen and one Blount jointly : That Blount soop after died, and before any part of the bond was paid, and said 31 illen survived and received assets from Horniblow. In June, 1802, he applied ^82 13, ,and in January, 1803» ¿£70 10, in part discharge of said bond, and endorsed the said sums thereon as credits : That Millen died in 1807, having in his hands, in money, besides other specific personal property, ¿£192 14 4 of the assets of Har-niblow, which were sufficient to, discharge the balance due on said bond and also the said obligation : That there was no other debt owing by his intestate : That said Millen made a will and appointed executors, who proved the same and delivered to the Plaintiff the said bond, and paid to the Defendant who had obtained letters of admi- *208 nístratíon de bonis non of .the estate of Ilorn'iblow the said sum of I'92 14 4, and delivered tp him the other effects of Horniblow.
The Jury found a verdict for the Defendant, subject ta the opinion of the Court upon such questions as arise out of the foregoing case. And it is contended, for the De^ fendant, 1. That by reason of the suspension of the ac* tion growing out of the fact, that Millen was'executor of-the creditor and administrator of the debtor, there is an extinguishment of the debt; and if not, then, 2dly, that the debt is discharged by reason of the as seta of Horni« blow. It is very true, that a suspension of personal duties by a man’s own act, will work an entire extinguishment. But the rule is strictly confined to the act of the party tec whom the duty belongs really and beneficially.* It would be exceedingly unreasonable if it were otherwise. Act cordingly, if a creditor appoint his debtor his executor, the debt is gone, even without proving the will. But if the ordinary appoint the debtor administrator, the debt is not extinguished.
The diversity here appears. In the former case, it is the act of the testator ; in the latter, it is the act of the - law.† And so, again, the law will not suffer one who i» act’nS 'u auter droit to prejudice the principal by a sus-penison of the means of enforcing a duty. Thus, if a feme executrix of the creditor marry the debtor, the debt survives upon the death of the husband, against his exe.> cutors‡ And, by parity of reasoning, 1 suppose, upon the death of the feme, the action can be brought by her surviving co-executor, against the surviving husband»
The reason given by Lord Coke for this last case ⅛⅜ that if the marriage produced an extinguishment, then there would be a devastavit, which the law will not ¿⅛-ply, because it is a wrong. So again, if the debtor make the obligee’s executor his executor, upon the death of him wh0 is executor of both, the action survives.§ And if the *209 debt is not extinguished, where the obligor makes the ob-ligee's executor his executor, it will surely survive when the creditor’s executor takes administration óf the debtor’s e%vate.* I should, therefore, think that the action might well supported, if there was nothing more in the case. But, upon the second question, I am of opinion with the Defendants, upon the ground that sufficient assets of Hor-niblow's estate came to the hands of Millen to discharge the debt, and that it was entitled to have them applied ⅛ due course of administration. It is not necessary that Millen should have actually, by endorsement on the bond or other similar act, have applied Horniblozu's assets in discharge of this debt, in order to its extinguishment. As soon as the assets came to his hands, the law made the application of them, and the debt became extinct ⅛-B tauter.
In Darcy's case,† the Court mentions a case where an obligor, who was executor of the debtor, sued the heir on the obligation. The Defendant pleaded, that the Plaintiff administered goods to the value of the debt and retained• the same sum towards paying himself. The Court said, that, whether he retained or not, was immaterial, as he might have done it, and it was his own folly not todo so. iThe Defendant consequently took issue, that he had administered the goods, and not upon the retainer. The reason of that is, that the creditor has full satisfaction of his debt by alteration oj the property of the assets. And it is upon this ground, that the whole doctrine of retainers, so. beneficial to executors, is founded. As soon as assets came to his hands, a satisfaction of his debt is effected, and the property of the,goods is changed and vested in hina¿ as his own proper goods, by operation of law. If that was not so, they would be assets still, and so,Iiable to suing creditors; which is not the case. And being a creditor in a representative capacity, makes no difference»!‡: There the Plaintiff, as executrix of the obligee, siied the , , ■ r • . , . ’ jyeiendant, as one ot two joint and several obligors.-— *210 Plea—that the Plairitiff was also executrix of thé ótftóf obligor. Replication—that the Plaintiff had fully administered all the assets of the deceased obligor, before thé creditor made her executrix, and that, at the time of the death of the creditor, nor at any time since, had any goods of her first testator come to her hands. On demurrer, the replication held good. But the Court said, that if there had been assets, the debt would have been extinct,Which shows, that where the same person is executor of the creditor and debtor both, he may retain of the assets of the debtor’s estate in satisfaction of his debt as executor of the creditor; and that, as he may, he shall do so*
It may be observed, that in the above casé, the debtor^ was afterwards made the creditor’s executor, and is the converse of the present case. That does not alter it.r For the reason of the whole is, that the same person that is to pay, is to receive. But an executor is only liable to pay, by reason of having assets. If he hath assets, he is the person to pay, in both^instances, whether the obligation to pay, precede the right to receive, or vice versa; and if he hath no assets, he is not to pay in any case. It is therefore, totally immaterial whether he be executor of the debtor before or after his being executor of the creditor. And in Lord Holt's first position,* he puts the case of the executors of the obligee, (as here) being made executors, (here administrators) to the obli-gor; and, having assets, the debt is extinct, and the executor cannot sue another obligor in the bond ; for, having assets, amounts to payment. As to the circumstance of part of the assets being specific chattels, that does not alter the case. There is but one exception to the right of the executor to retain so much of the testator’s as will satisfy his debt, and that is of lands appointed to be sold by hit» as executor.† But if that was not the case, he might sell the goods to the value of the debt; and as he might have done it, it is his own fault that he did not. Besides, in all the cases, there is no distinction taken aá *211 to *hp kind of íssets* which, htipg in the hands of the tke u. r wiil work án e»tinguishnreitt; bat it is said of ' « Is generally :—an : in théde old cases, theyjudgcs are tery scrupulous about laying down general propositions, unless-the rules are of general operatiop.
Wherefore, Í aril for judgrn nt lor the Defendant.
Tne other Judges concurre^»

 Flow. 36

 Needsam's case, 8 Co. Rep. 136.

 Cr. Eliz 114.

 1 Salk. 305.

 8 C. Rep. 136.

 Plowd.

 Dorchester v. Webb., Cre. Cur 373.

 Wankford v. Wankford, 1 Salk. 305.

 Nay's Man. C. 47. p 120.